**NATKIN & CO. v. ARO EQUIPMENT CORP.**

Civ. 6263.

United States District Court
N. D. Ohio, Western Division.

Feb. 23, 1951.

Farber, Cochrane, Green & Schrader by J. Eugene Farber, Toledo, Ohio, for plaintiff.

Shumaker, Loop, Kendrick & Winn, Toledo, Ohio, for defendant.

KLOEB, District Judge.

Demand for jury being withdrawn, this case was submitted to the Court on the pleadings, the pretrial agreement of counsel to confine the hearing to the question of liability, the evidence and the briefs.

Plaintiff, in its amended complaint, states that, on the 17th day of December, 1947, it entered into an agreement with the defendant, wherein defendant agreed to buy 1,000 Aro Service Merchandisers at a price of $159.85 each, and plaintiff agreed to manufacture, sell and deliver to the defendant 1,000 Aro Service Merchandisers to be purchased as set forth in the agreement; that plaintiff entered upon the performance of the contract and began the manufacture of said Merchandisers and did all things necessary and proper on its part to be done, but defendant neglected, failed and refused to comply with its agreement; that defendant wrongfully, and in violation of its contract, repudiated the same and refused to carry it out; that plaintiff, from time to time, delivered, in part performance of said contract, a total of 226 units, but defendant has wholly failed to authorize the manufacture or to give shipping instructions or to purchase the remaining 774 units; that by reason thereof plaintiff has been damaged in the sum of $58,732.06.

Defendant, in its answer, admits that it entered into an agreement on December 17, 1947 with plaintiff relative to the purchase of Aro Service Merchandisers, but denies that the terms of the agreement were such as are alleged by plaintiff; it admits that over a period of time it requested and plaintiff manufactured and delivered a total of 226 of the Merchandisers for which it paid plaintiff; it denies that the paper executed on December 17, 1947 was ever intended by the parties to be an agreement or a part of any agreement between them, and alleges that plaintiff never performed the terms and conditions contained in this paper writing, nor offered nor was able to perform the same. It alleges that an oral agreement was entered into whereby plaintiff should produce and deliver to defendant so many of the Merchandisers as defendant should authorize and order from time to time, and concludes with asking that the amended complaint be dismissed.

At the trial of the case plaintiff offered three witnesses, to wit, Joseph Richardson, of St. Louis, Missouri, who, on December 17, 1947, was the general man-

ager of plaintiff's plants located at Omaha, Houston, Kansas City, Lincoln and St. Louis, the one located at the latter point being its principal plant; Samuel J. Shure, who was the president of the plaintiff corporation; and Adolph Winde, an employee of plaintiff. The testimony of Mr. Richardson is very important.

The defendant offered five witnesses, to wit, James E. Allen, who, on December 17, 1947, was the executive vice president of the defendant corporation; A. C. Swygard, who was the manager of the lubrication department of the defendant corporation; Betty Sanford, who served as secretary to Mr. Swygard; K. H. Zinsmaster, who was purchasing agent for the defendant; and Elvin W. Iman, who served in Mr. Swygard's department. Of these witnesses, the testimony of Mr. Swygard is of primary importance. The Court has had the benefit of a complete transcript of the record and has reviewed pertinent parts thereof, and particularly the testimony offered by Mr. Swygard.

Numerous exhibits were identified, offered and admitted by the Court. In order to obtain a clear and concise picture of the proceedings had between the parties hereto, the Court found it advisable to review these exhibits and study them intensively. Plaintiff's Exhibits 1 to 65, inclusive, consist mainly of the correspondence had between the parties and, in view of the fact that they follow in chronological order, it is helpful to read them in that order.

At the conclusion of the trial, and in connection with the request of the Court for the submission of briefs, the Court, with the aid of his notes, expressed his views on certain phases of the testimony in order to narrow the issues for counsel in the preparation of their briefs.

It appears that, on February 3, 1947, plaintiff directed a letter to defendant (Plaintiff's Exhibit 2), in which they stated:

"We are manufacturing a line of sheet metal cabinets for the automotive lubrication industry and we have at this time some additional capacity and steel to manufacture same",

and they invited defendant to communicate with them if it was interested.

To this communication Mr. Swygard replied on February 7, 1947 (Plaintiff's Exhibit 3) and expressed an interest.

On February 21, 1947, Mr. Richardson replied to defendant's letter and suggested that he would stop at defendant's plant in Bryan, Ohio the week of March 3d. (Plaintiff's Exhibit 4).

On February 24, 1947, defendant replied that Mr. Allen and Mr. Swygard were both away from the office and were not expected to return until after March 3d.

Mr. Richardson then called at defendant's office but failed to make contact with either Mr. Allen or Mr. Swygard.

The matter seemed to rest at this point until November 5, 1947, when Mr. Swygard directed a letter to plaintiff (Plaintiff's Exhibit 6), in which he expressed a willingness to have plaintiff fabricate a Service Merchandiser similar to the one that it was manufacturing for the Lincoln people and, on November 13, 1947, Mr. Swygard wrote plaintiff (Plaintiff's Exhibit 7) that he would be in St. Louis on November 19th and would call at plaintiff's plant.

Following the visit of Mr. Swygard in St. Louis on November 19, plaintiff wrote the defendant company on December 2, 1947 (Plaintiff's Exhibit 8), in an effort to comply with certain conclusions arrived at during the interview in St. Louis.

On December 6, 1947, defendant, through Mr. Swygard, wrote plaintiff that they were greatly interested in plaintiff's proposition and would like to talk with them with reference to schedule of shipment, etc.

On December 17, 1947, Mr. Shure and Mr. Richardson, by prearrangement, arrived at the office of the defendant and there met Mr. Allen, Mr. Swygard and Mr. Zinsmaster. During a conference of several hours duration, Mr. Allen was present only a small part of the time, although he was the executive vice president and finally responsible for such action as might be taken. Mr. Zinsmaster was present but a small part of the time,

and his chief function was to draw up Plaintiff's Exhibit 10 under the instructions of Mr. Swygard. Mr. Swygard conducted the negotiations for the most part on behalf of the defendant corporation and testifies that he had authority so to do and had the authority to take such steps as he did then and thereafter take.

It thus becomes apparent that the testimony of Mr. Richardson, who, it appears, conducted the negotiations in chief for plaintiff, and of Mr. Swygard, who represented the defendant, is of primary importance in connection with the execution of Plaintiff's Exhibit 10.

Defendant has asserted, in effect, three defenses to the claim of plaintiff as follows:

1. That Plaintiff's Exhibit 10 does not rise to the dignity of a contract;

2. The agreement entered into between the parties was a requirements contract, entirely oral, and the purchase order (Plaintiff's Exhibit 10) was merely a formal document for the use of plaintiff in obtaining a continuing supply of steel from its suppliers;

3. The original agreement, whatever it may have been, was modified with the mutual consent and by the course of conduct of the parties, so that the contract became and was carried out as a contract for defendant's requirements of Merchandisers.

The Court cannot agree that Plaintiff's Exhibit 10 was not a contract. The conclusions arrived at after several hours of conversation between the authorized parties for plaintiff and defendant, and had in the office of the defendant company on December 17, 1947, were set down on defendant's own purchase order form at the dictation of Mr. Swygard and Mr. Zinsmaster. Paragraph one on the back of Exhibit 10 reads as follows:

"The contract resulting from the acceptance of this order shall be construed according to the laws of the State of Ohio * * *."

It thus appears that the defendant considered that its own purchase order blank, when executed, arose to the dignity of a contract and certainly Exhibit 10 contains all the elements necessary to constitute a contract. The only indefinite item in the contract reads as follows:—"Balance—To be manufactured as released." This point will be discussed later.

As to the second position taken by the defendant that the agreement entered into was a requirements contract for the use of plaintiff in obtaining a continuing supply of steel from its suppliers, the Court feels that the record does not sustain such a contention.

Mr. Swygard was clearly of the opinion that he had given an order for 1,000 units and that his company was bound therefor. On pages 419 and 420 of the record, we find the following questions asked of Mr. Swygard and answers given:

"Q. Well, let me reframe the question. You admit, do you not, that you gave an order for 1,000 Merchandisers? A. Yes.

"Q. You admit also, do you not, that you were required under Exhibit 10 to take 1,000 Merchandisers? A. Yes."

Mr. Swygard is equally clear in his testimony that the plaintiff company had plenty of steel to perform its part of the agreement, and nowhere does the Court find substantial proof for the claim that Exhibit 10 was merely a formal document drawn up for the use of plaintiff in obtaining a continuing supply of steel from its suppliers. It is true that Mr. Zinsmaster offered some statement to that effect, but he was quoting what he said Mr. Swygard told him. Mr. Swygard, however, makes no such contention. Mr. Allen, while he was present on December 17th, says he neither heard nor participated in any discussion of steel or of the scarcity of steel. (R, p. 319 and 334).

As to the third contention that the contract became and was carried out as a contract for defendant's requirements of Merchandisers, the Court finds no substantial proof in support thereof.

The defendant apparently bases its contentions that the agreement was solely for the purpose of enabling plaintiff to obtain

steel, and that the agreement was in the nature of a requirements contract, on Defendant's Exhibit E, which is a copy of a letter dictated by Mr. Swygard and addressed to plaintiff on December 29, 1947, twelve days after the execution of Exhibit 10.

There is much controversy over Defendant's Exhibit E. Mr. Swygard testifies that he dictated the letter to his secretary, Betty Sanford, and that he signed the letter after she had typed it. Mrs. Sanford testifies that she folded the letter, inserted it in an envelope and either carried the envelope to the mailing room or left it on her desk, she is not certain which. Mr. Richardson testifies positively that he never received the original of Defendant's Exhibit E. Whether the letter was ever actually mailed by Mrs. Sanford, and whether it was received by Mr. Richardson, is a subject of considerable controversy between the parties. Certain it is that no reference to Exhibit E was ever thereafter made either in any of the frequent telephone conversations that were had between Mr. Richardson and Mr. Swygard up to February 1, 1948, or in any communications that were thereafter exchanged between the parties.

Assuming that it was received, then the only significance that the Court could attach to it would be that it was intended to operate as a change in the number and order of fabrication of Merchandisers as outlined in Plaintiff's Exhibit 10. It in nowise affected the agreement of the parties to manufacture and deliver on the one side, and to purchase and receive on the other side 1,000 Merchandisers.

Mr. Swygard left the employ of the defendant corporation on February 1, 1948, and thereafter the onerous duty of supervising the sale of and executing the purchase orders for the Merchandisers under the contract fell upon the shoulders of Mr. Zinsmaster. His communications clearly indicate that he was attempting to carry out an obligation assumed by virtue of Plaintiff's Exhibit 10.

On July 21, 1948, plaintiff directed a letter (Plaintiff's Exhibit 46) to the defendant, which indicates that up to that point it had exercised patience and tolerance with the failure of defendant to carry out the terms of its agreement, and it further indicates that any concessions that had theretofore been made at the instance and request of defendant had been in the nature of business courtesies whereby the plaintiff was attempting to cooperate with defendant in an effort to help it meet its problems. Plaintiff's Exhibit 54, which is a letter dated March 9, 1949, and which was written following a visit by Mr. Richardson to defendant's office, also gives a very clear picture of the relative positions of the two parties.

It is significant that the defendant did not answer Plaintiff's Exhibit 46 until August 11, 1948, and after it had received a prodding letter from plaintiff bearing date August 4, 1948 (Plaintiff's Exhibit 47). It is also significant that, in the communications following plaintiff's letter of March 9 to defendant (Plaintiff's Exhibit 54), no direct reply could be received from the defendant, nor was one ever received. Plaintiff's Exhibit 61, which is a letter written by plaintiff to defendant bearing date May 14, 1949, bears this out. At no time did defendant question the correctness of the assertions made by plaintiff in its letters, Exhibits 46, 54 and 61.

The Court is of the opinion that such modifications as may have been made to the original agreement did not change this agreement to a so-called requirements contract which would permit the defendant to order as little or as many of the Service Merchandisers from month to month and from year to year as it chose to order. The testimony of Mr. Swygard differs very little from that of Mr. Richardson in their agreement had on December 17, 1947 that the defendant expected to order Merchandisers at a monthly rate in excess of that specified in Plaintiff's Exhibit No. 10 for the months of March, April and May, 1948, and after these specified monthly requirements had been met. This bears on that part of the contract which reads: "Balance—To be manufactured as released." Mr. Swygard knew that plaintiff had manufactured more than a million dollars worth of the Service Merchandisers

for the Lincoln people during the previous year. He testifies that he estimated that it was in the neighborhood of 4,600 that they had so manufactured, and he was of the opinion that Aro, as a competitor of Lincoln in this field, would require far in excess of 150 per month after May of 1948. The actual number of Merchandisers ordered by defendant after the execution of Exhibit 10 is set forth on Plaintiff's Exhibit No. 65. This exhibit discloses that the orders ranged from 1 to 30 units per month during the years 1948 and up to August of 1949.

The defendant, in the opinion of the Court, has failed and neglected to carry out its part of the agreement, and plaintiff was ready, willing and able to perform its part of the agreement. Plaintiff is entitled to judgment subject to the determination of the actual damages by a Special Master if the parties fail to mutually agree thereon.

If the parties fail to agree within 10 days on the damages sustained by plaintiff by virtue of the breach of the contract, and the parties fail within 10 days to agree on a Special Master to hear the question of damages, then the Court will appoint a Special Master.

In view of the detail of this opinion, findings of fact and conclusions of law are unnecessary.